THE PUBLIC SERVICE COMMISSION OF THE COMMONWEALTH OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, JESÚS A. GONZÁLEZ, JUDGE, Respondent; STAR TAXICABS, INC., ET AL., Interveners.

No. 2169. Argued April 12, 1955.—Decided May 6, 1955.

230

José Trías Monge, Attorney General, Edgar S. Belaval, Assistant Attorney General and M. B. Carrasquillo, Ernesto C. Blanco, Nellie Ortiz Torres and Roberto Rivera Escalera for petitioners. Juan A. Faría and Rafael Martínez Álvarez for interveners.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On February 15, 1955, the Public Service Commission entered an order fixing the provisional rates to be put into force for all taxicabs in Puerto Rico.

According to the text of that order, the taxicab service in Puerto Rico, particularly in the metropolitan area, was governed, up to 1947, by the system of rates by zones approved on September 11, 1942, by the Public Service Commission. On March 18, 1947, the Arrow Taxi Cabs, Inc., De Diego Taxi Cabs, Inc., City Taxi Cabs, Inc., Star Taxi Cabs, Inc., and Majestic Taxi Cabs enterprises filed a motion urging the Commission to fix the following rates:

35 cents for the first quarter of a mile
5 cents for each additional quarter of a mile
$2 for each waiting hour.

Two days later, March 20, 1947, those enterprises filed another motion urging the approval of the proposed rates as provisional rates until permanent ones could be fixed. The Commission granted the motion and on March 27, 1947, entered an order approving the proposed provisional rates. Since then and for a period of eight years those rates have been in force. For the purpose of reviewing the provisional

rates and fixing permanent ones, the Commission entered an order on November 27, 1951, calling for hearings. In spite of the fact that the hearings were held and the Commission received the evidence offered by the taxicab enterprises and by its Legal Division, the Commission was unable to reach any conclusions which would enable it to review the provisional rates and to fix permanent ones. Hence, on February 24, 1953, it entered an order discontinuing, bringing to an end, and dismissing the proceedings commenced under its order of November 27, 1951. On that same day, February 24, 1953, the Commission entered another order setting March 17, 1953, for the commencement of a new proceeding for the purpose of reviewing the provisional rates in force and fixing permanent ones. Notice of this order was served on the taxicab enterprises, but the hearing was never held. On March 18, 1953, the Majestic Taxi Cabs, De Diego Taxi Cabs, Inc., Sky View Taxi Cabs, Inc., Taxis Arrow, Inc., Star Taxi Cabs, Inc., and Metro Taxi Cabs, Inc., filed with the Commission a motion urging that the provisional rates in force be increased and permanent ones fixed. The Commission did not entertain this motion. On December 14, 1954, the Commission, composed of the new members who are the present incumbents, entered an order summoning all taxicab enterprises and the public to a hearing to be held on January 13, 1955, for the commencement of proceedings to review the provisional rates and to fix permanent ones. Public hearings were held during five alternate days, at which oral and documentary evidence was presented to and received by the Commission.

As a result of the hearings, the Commission entered the order of February 15, 1955, referred to at the beginning of this opinion, fixing the following provisional rates for taxicabs:

"(a) Initial charge—20 cents and 5 cents for each
additional quarter of a mile . . .

"(b) Waiting time—$2 for each waiting hour . . .

"(c) Rate per hour—$3 per hour or fraction thereof."[1]

The Star Taxi Cabs, Inc., Taxis Arrow, Inc., Majestic Transportation Co., Inc., and De Diego Taxi Cabs, Inc., timely appealed from this order to the San Juan Part of the Superior Court. When served with the notice of this appeal, the Commission filed a motion in that court urging that the appeal be dismissed on the ground that the court lacked jurisdiction because the appeal was premature, inasmuch as on February 25, 1955, a great number of public carriers other than appellants, authorized to operate a taxicab service, filed with the Commission a motion for reconsideration of the order appealed from, which is pending, wherefore the order in question may be modified, amended, rescinded, or affirmed by the Commission.

Before the Commission filed its answer and certified the record of the hearing, the court, on appellants' motion, set a date to hear the parties on (1) the lack of jurisdiction of the Commission to fix the provisional rates involved in the order appealed from, and (2) the nullity of the said order. The hearing was held on March 18, 1955. Both parties appeared and argued the motion to dismiss filed by the Commission and the questions of law raised by appellants.

Five days later, March 23, the court entered an order containing the following pronouncements: (1) overruling

---

[1] Paragraph 1 of the dispositive part of the order provides:

"Therefore, be it resolved and ordered by the Public Service Commission of Puerto Rico:

"1.—*Rates*—In view of the foregoing reasons, the rates fixed herein shall, for all legal purposes, have a provisional character. When this order takes effect, the rates to be collected by taxicabs in Puerto Rico shall be as follows:

"(a) *Initial charge*—20 cents and 5 cents for each additional quarter of a mile; *Provided,* that the proper officers of this Commission shall adjust the taximeters in order to conform them to the rates herein established.

"(b) *Waiting time*—$2 for each waiting hour, provided that the charge on this account shall be collected only when the passenger himself orders the taxi to stop or to wait for him. Stops made necessary

the motion to dismiss filed by the Commission, and (2) de-claring null and void the order of the Public Service Commission of February 15, 1955, fixing the provisional rates for taxicab enterprises, on the ground that (a) the Public Service Commission lacks jurisdiction to enter an order fixing provisional rates when there is no proceeding pending before it to fix permanent rates, and (b) because the Commission "did not make the determinations provided in § 24 (a) [of the Public Service Act, No. 12 of 1941, Sess. Laws, p. 342] when fixing the provisional rates . . . ," but, on the contrary, the Commission fixed the provisional rates on the basis of considerations other than those expressly mentioned in § 24 (a).

In order to review these proceedings, we issued a writ of certiorari and ordered the parties to discuss in their briefs. the merits of the judgment appealed from as well as the questions of jurisdiction and procedure.[2]

■ According to the foregoing recital of facts, this. appeal involves two fundamental questions. The first is whether the respondent court was empowered to take cogni-- zance of the appeal while a motion for reconsideration of the order appealed from was pending before the Commission, and the second, whether the court had authority to dispose

---

by traffic lights, traffic obstructions, or by other causes over which the passenger has no control, shall not be deemed waiting time.

"(c) *Rate per hour*—$3 per hour or fraction thereof.

"(d) The following baggage rates are hereby authorized:

"(a) 10 cents for each suitcase in excess of two.

"(b) 25 cents for each trunk, provided that no charge shall' be collected for packages, handbags, or other similar· baggage units."

[2] The record sent up to this Court consists only of the following· documents: (1) Petition for appeal together with copy of the order· appealed from and a sworn statement of appellants' attorney, (2) motion. to set the hearing of the questions of law raised by appellants, (3) order of the court setting the hearing, (4) motion to dismiss filed by the Public· Service Commission, accompanied by copy of the motion for reconsidera-- tion filed with the Commission by a great number of public carriers,. (5) order of the court setting aside the order of the Commission, and. (6) notice of such order.

of the appeal on its merits without having before it the certified record of the proceedings before the Commission.

We now turn to the first question.

Section 78 of the Public Service Act (No. 70 of 1917, Vol. II, Sess. Laws, p. 432) in its pertinent part provides:

"Within thirty days after the filing of any finding or determination by the commission, or after the date of service of any order, *unless an application for a rehearing may be pending,* and then within thirty days after the refusal of such application, or the entry of an order modifying, amending, rescinding, or affirming the original finding, determination or order, any party to the proceedings affected thereby may appeal therefrom to the San Juan Part of the Superior Court. . . ." (Italics ours.)

Section 75 of the Act empowers the Commission to grant and hold a rehearing if sufficient cause therefor be shown, in respect to any matter determined in or by its hearing, or investigation and order issued therein. The parties shall apply for a rehearing within 15 days after the service of said order, specifically setting forth the grounds on which it is based.

■ The respondent court denied the motion to dismiss filed by the Commission relying solely on the fact that no petition for a "rehearing" was pending before the Commission, inasmuch as, since no request for a rehearing was made in the so-called "Motion for Reconsideration," the latter did not interrupt the term to appeal.

We need not stop to consider the legal meaning of the terms "reconsideration" and "rehearing". The name is unimportant. A careful study of the "Motion for Reconsideration" in question convinces us that it complies with the requirements of a petition for a "rehearing" under § 75 of the Public Service Act. Petitioners therein moved the Commission to declare null and void and to set aside its order of February 15, 1955, fixing the provisional rates. The petition or "Motion for Reconsideration" contains a

detailed recital of the specific reasons on which it is founded. They further move the Commission to order a hearing on said motion. This is sufficient and we cannot therefore agree with the respondent court that no petition for a rehearing was pending before the Commission.

However, the petition for a rehearing filed by other public carriers which were affected by the order of the Commission did not interrupt the 30-day period for appeal allowed to the afore-mentioned taxicab enterprises. Let us see.

 The provisional rates in the instant case were fixed by the Commission in the exercise of the power vested in it by § 24 (a) of the Public Service Act.[3] After providing that, after notice is served and a hearing is held, the Commission may fix, determine, and prescribe provisional rates in any proceeding filed to determine the reasonableness of the rates of any public-service enterprise, this section prescribes that "The provisional rates so determined and prescribed shall be based on the need to provide a return of not less than five (5) per cent on the original cost, less the depreciation suffered by the physical property used in the service rendered by the public-service company involved in the case." This means that in fixing the provisional rates the Commission shall treat each taxicab enterprise or natural

---

[3] Section 24 (a) in its pertinent part provides:

"In any proceeding filed to determine the reasonableness of the rates of any public-service enterprise, the commission may, after notice is served and a hearing is held, in those cases where, in its judgment, such action is required for public benefit, fix, determine, and prescribe provisional rates which shall be put into effect by the public-service company involved, during the time necessary for the determination of the rates which should finally be in effect.

"The provisional rates so determined and prescribed shall be based on the need to provide a return of not less than five (5) per cent on the original cost, less the depreciation suffered by the physical property used in the service rendered by the public-service company involved in the case. If the reports, duly certified by the said company, do not include the original cost less the depreciation of the said property, the commission may estimate said cost and depreciation and fix, determine, and prescribe the rates in the manner herein provided."

person authorized to operate a taxicab business as an individual case, on the basis of original cost, less depreciation, of the physical property used by each of them in the service.[4] The same § 24 (a) provides that the Commission may determine this depreciated original cost from the reports certified by the companies, and if these do not include the depreciated original cost, then the Commission may make an estimate of the same. This compels us to refer anew to the "Motion for Reconsideration" filed with the Commission by the other taxicab operators. They allege in that motion that the Commission did not have before it any evidence on the original cost of their properties or on their depreciation; that they presented evidence on their financial condition and on the receipts and operating expenses of their respective public-service enterprises; and that such evidence does not warrant a rate reduction, wherefore the rates fixed by the Commission are confiscatory. Other allegations of the motion likewise deal with the individual problem of each one of them.

In disposing of that motion, the Commission may very well decide that the provisional rates make provision for a return of not less than 5 per cent on the original cost, less depreciation, of the physical property used by the petitioners therein in the service of their taxicab enterprises, if the evidence warrants such a conclusion, or, on the contrary, it may decide that such provisional rates do not provide for the minimum return required by the statute. In either case, the basic factor which the Commission must take into account is the original cost, less depreciation. That factor is not common to all enterprises and persons authorized to operate a taxicab business in Puerto Rico. Therefore, the determination by the Commission as to whether or not, after taking into consideration this basic factor as respects the

---

[4] Even in the fixing of permanent rates each utility presents an "individual problem." See footnote 6 of the opinion in *Cía. Azucarera Toa* v. *Public Service Comm'n,* 71 P.R.R. 197.

petitioners in the incident of reconsideration, the provisional rates provide them with the statutory minimum return, in nowise affects appellants whose individual problem, in so far as it refers at least to the original cost, less depreciation, of their property, in all likelihood is different. Consequently, the motion for reconsideration or rehearing did not preclude the entities or persons not a party to that motion for reconsideration from appealing from the order of the Commission.[5]

■ Having decided that the appeal from the order of the Commission fixing the provisional rates was not premature, we turn to the second question involved in this appeal, namely, whether the court had authority to decide, at such stage of the proceedings before it, the appeal on the merits and, consequently, to set aside the order appealed from.

As stated above, the court set aside the order appealed from (1) because the Commission lacks jurisdiction to fix provisional rates when there is no proceeding pending before it to fix permanent rates, and (2) because the Commission did not make the determinations provided in § 24(a) when fixing the provisional rates.

Regarding the first point, the court relied on the case of *Cía. Azucarera Toa* v. *Public Service Comm'n*, 71 P.R.R. 197, in which we held that the Legislature has provided in § 24(a) that a provisional rate shall be fixed for traditional public utilities (and for sugar companies) only while a proceeding for a permanent rate is pending. The respondent court concluded that, upon the face of the order appealed from, "it appears that the Public Service Commission has

---

[5] The problem, and perhaps its solution, might be different if the Commission, by a proper order, had decided to grant a rehearing to all enterprises concerned, for the purpose of determining whether or not to reconsider its order fixing the provisional rates; or if upon entertaining the motion for reconsideration it had suspended the effects of such order as to all those affected thereby until the decision on the reconsideration.

fixed provisional rates for taxicab enterprises without there being pending before it any permanent-rate proceeding, inasmuch as upon the face of that order it appears that the Public Service Commission has fixed provisional rates for the purpose of facilitating a better study of the business and of fixing, at the proper time, the permanent rates."

The respondent court has no power to decide such an important question on the sole basis of the order appealed from. Its decision rests on inferences and interpretation of the language of the order which may well be incorrect. For example, it could be inferred to the contrary, from the following paragraph of the order, that a permanent-rate proceeding is pending before the Commission.

"On December 14, 1954, the Public Service Commission, speaking through its new members, entered an order summoning all taxicab enterprises and the public to a hearing to be held at 2 p.m. on January 13, 1955, *for the purpose of commencing a proceeding* to review the provisional rates and *to fix permanent ones* for the taxicab service in Puerto Rico." (Italics ours.)

We are not deciding that the permanent-rate proceeding commenced with the order of December 14, 1954. This might be so if the record of the proceedings before the Commission did not show otherwise. There is a marked distinction between the facts of the instant case and those of the *Compañía Azucarera del Toa*. In that case the Commission itself admitted that no permanent-rate proceeding had been instituted. Indeed, in setting the hearings to fix the provisional rates in that case, the orders of the Commission recited that "studies related to the appraisal of the properties" of the companies therein involved had been initiated. We stated then that the mere making of an *ex parte* investigation, referring to the initiation of "studies related to the appraisal of the properties," does not constitute the filing of a proceeding. However, in the instant case, judging from

the face of the order, the Commission entered an order summoning the taxicab enterprises and the public to a hearing for the dual purpose of (1) reviewing the provisional rates and (2) fixing permanent rates. The hearings were held and the Commission received documentary and oral evidence. The fact that the Commission stated in the order that it was necessary to make a more elaborate study, with more concrete data, in connection with the operation of taxicab enterprises and other independent carriers or associations engaged in the same business in order to reach a definite conclusion, and for that reason it would not fix the permanent rates at such time, does not imply that the proceeding, if any, which had been commenced to fix the permanent rates had terminated and, hence, was not pending before the Commission. As already stated, we are not deciding that a permanent-rate proceeding is pending before the Commission. We merely wish to indicate that such inference may be drawn from the context of the order appealed from. However, this question must be decided at the proper time by the respondent court on the basis of the facts shown in the record certified by the Commission.

We now turn to the second point. In holding that the order of the Commission fixing the provisional rates violates the provisions of § 24(a), the respondent court evidently passed on the merits of the appeal taken by the taxicab enterprises without having before it, as already stated, the certified record of the Commission.

There is no question that the Public Service Commission in fixing the provisional rates is bound to adhere to the norm established in § 24(a). The provisional rates must be based on the need to provide a return of not less than 5 per cent on the original cost, less depreciation, of the physical properties used in the service rendered by the public-service company concerned. If the rates fail to provide the minimum

return, they shall be void.[6] How can we tell if the provisional rates fixed by the Commission for appellants do not provide the statutory minimum return? Among the findings of fact made by the Commission is the following:

"In the case under consideration there is no evidence, nor any intimation, that the enterprises or independent carriers authorized to engage in the taxicab business operate with any loss of capital as a result of the provisional rates in force. On the contrary, the evidence shows that *the margin of profit for some is unusually high and for others higher than the reasonable limit which should be permitted by law to a public-service enterprise."* (Italics ours.)

Although this conclusion is of a general character and does not refer specifically to appellants, neither does it exclude them; therefore, if it should appear from the record that the rates challenged allow appellants a return of not less than five per cent on the original cost of their property, less depreciation, they would have no legal basis on which

---

[6] The Commission is bound to treat each taxicab enterprise, person, or entity authorized to operate such business as an "individual problem." *Cía. Azucarera Toa* v. *Public Service Comm'n, supra.* It would be undesirable and improper to fix for taxicabs rates which are not uniform, both because of the manner in which such rates would affect the public and because of the economic consequences on some of the public-service companies engaged in this business. In fact, since the Commission is bound to treat each public-service company as an "individual problem," the task of fixing uniform rates for all is quite difficult though not impossible. The Commission recognizes this difficulty in stating as follows:

"The findings and the facts recited above prove that it is not possible to fix a basic rate for dissimilar businesses which nonetheless render an identical service. To fix, for example, a return of 10 percent for the operator of a vehicle worth $2,000 would be inadequate, while that same return may be fair and reasonable for an enterprise having operating facilities worth thousands of dollars. Under those conditions, we cannot adhere to the unbending rate-fixing formulas. We must rely principally on economic facts and make a comprehensible study of the taxicab business."

We recognize that the standards prescribed by our Act for fixing provisional as well as permanent rates are not really adequate in fields such as the operation of taxicabs, where a relatively small amount of property is used, where no monopoly exists, and where uniform rates

to challenge them.[7] In any event, the respondent court was
without power to pass upon the validity of the order appealed
from without having before it the certified record of the
Commission. This is not the first time that the scope of
the judicial review provided in the Public Service Act comes
up for our consideration. Under § 79 of the Act, the Com-
mission, within 30 days after such notice of the appeal, "shall
certify . . . to the proper court . . . the record of the said
proceedings . . ." The record shall include "the testimony
taken therein, the findings of fact, if any, of the Commis-
sion based upon such testimony, a copy of all orders made
by the Commission in said proceedings, and a copy of the
opinion, if any, filed by the Commission." [8] Section 82 pro-
vides that the Commission shall file an answer within 30 days
after receiving notice of the appeal taken, and that upon the
filing of an answer "the case shall be considered at issue and
a hearing shall be held before said court"; and § 83 provides
that at the hearing of the appeal "the said court shall, *upon
the record* certified to it by the Commission, *determine
whether or not the order appealed from is reasonable and in
conformity with law.*" (Italics ours.)

According to the foregoing provisions, this appeal is
based solely on the record before the Commission and the

are desirable. However, as long as the Legislature does not re-examine
and modify those standards, the Public Service Commission can do nothing
except to follow them.

[7] We agree that in cases of this nature the Commission should make
specific findings on the depreciated original value of the physical prop-
erties used by each one of the public-service enterprises. The appellate
court will thus be in a better position to decide "whether or not the
order appealed from is reasonable and in conformity with law." In view
of the scope of the judicial review provided by the Public Service Act,
we are inclined to believe that an order of the Public Service Commis-
sion is not void because it fails to recite the aforesaid findings of fact,
particularly since the Act does not expressly impose such obligation.

[8] The purpose of the statute in providing that the record be sent
up on appeal is to afford the appellate court an opportunity to see
whether there is some reasonable basis for the decision of the Commis-
sion. *Schuylkill Ry. Co.* v. *Public Service Commission,* 112 Atl. 5.

function of the court is confined to deciding "upon the record" whether or not the order appealed from "is reasonable and in conformity with law." *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608, and cases cited at p. 613. Therefore, the court is bound to pass upon the record certified by the Commission before deciding whether or not the order appealed from is reasonable and in conformity with law. *St. Clair Borough* v. *Tamaqua & Pottsville E. Ry Co.*, 103 Atl. 287.

The judgment rendered by the respondent court is not based on the certified record of the Commission. Consequently, the court was in no position to decide, and neither are we, whether or not the order appealed from is reasonable and in conformity with law.

In view of the foregoing, the judgment rendered by the respondent court on March 23, 1955, will be reversed, and proceedings not inconsistent with this opinion shall be continued in that court.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ concurring in part and dissenting in part.

I am in agreement with that part of the opinion of the Court which establishes that it is necessary for the record of every proceeding before the Public Service Commission, certified by it, to be examined by the Superior Court upon entertaining an appeal such as this, it being the duty of that court to rely exclusively on such record in deciding whether or not the order appealed from is reasonable and in conformity with law. Consequently, I agree with the conclusion that the judgment herein challenged is null and void, since the respondent court passed upon the merits of the appeal without having before it the record of the proceeding before the Commission. However, my opinion is that that court lacked jurisdiction to entertain the appeal and that the judgment is, for that reason, null and void. The

petition for a rehearing made by several public carriers affected by the order of the Commission interrupted, in my opinion, the 30-day period allowed to the taxicab enterprises, interveners herein, to appeal therefrom. Irrespective of the manner in which the statutory provisions ought to be applied by the Commission when fixing the taxicab rates, the public interest in such action, by reason of the class of public service being regulated, and the need for uniform rates which the public is bound to pay for taxicab service— § 23 of Public Service Act No. 70, approved December 6, 1917 (Sess. Laws, p. 432, vol. II), as amended by Act No. 440 of May 15, 1951 (Sess Laws, p. 1274)—leads me to conclude that whenever the Public Service Commission grants a rehearing, even on motion of only one of the parties to the proceeding, the granting of such rehearing necessarily interrupts the time for appeal not only of the interested party but also of any of the other parties to the proceeding, if they are affected by such order. Section 78 of the Act.

At the rehearing, the Commission is, of course, bound to look into the problem of the rates, not only as to the extent to which they affect the party moving for a hearing, but also as to all other parties which, having been a party to the proceeding before the Commission, were affected by its order, making a redetermination pursuant to the statutory requirements and taking into consideration all the factors which should be properly examined before fixing the rates. Sections 23 and 24(a) of the Act, the latter having been added by Act No. 12 of April 9, 1941 (Sess. Laws, p. 342).

I therefore agree that the judgment of the respondent court is null and void, but for lack of jurisdiction, although the other reasons on which the court based the ground of nullity are also present. Under such circumstances, there is not, in my opinion, any further proceeding to be prosecuted in the respondent court other than remanding the case to

the Commission for such proceedings as ought to be prosecuted there under the law.

-----

MR. JUSTICE BELAVAL, dissenting.

In my opinion, the San Juan Part of the Superior Court should not continue intervening in the instant case after the Public Service Commission has decided to review the proposed rates. As a matter of reality, the Public Service Commission is not acting here as a ministerial or quasi-judicial body, but as a quasi-legislative body. *Molini* v. *Sociedad Mario Mercado e Hijos*, 73 P.R.R. 873, 879 (Snyder, 1952). It may at any time "alter, amend, modify or repeal any rates, fares, or charges now in force which are not just, due, *equal* and reasonable" (§ 23 of Public Service Act No. 70 of December 6, 1917, Vol. II, Sess. Laws, p. 432, as amended by Act No. 442 of May 14, 1947, Sess. Laws, p. 922, and Act No. 440 of May 15, 1951, Sess. Laws, p. 1274). I do not believe it is the best judicial attitude to consider any decision of the Public Service Commission as being so final and unalterable that it cannot be altered, amended, modified, or repealed at any time by the Commission. The analogy which occurs to me is that of a legislature which would have to wait for the courts to declare an act unconstitutional in order to amend it.

I have serious doubts as to whether, in order to fix provisional rates under § 24 (*a*), which was added to the Public Service Act of Puerto Rico by Act No. 12 of April 9, 1941 (Sess. Laws, p. 342), the Public Service Commission is bound to determine a return of not less than five per cent on the original cost, less depreciation, regarding as an individual problem each taxicab enterprise, person, or entity authorized to operate in that business. We have been unable to find anything in the Public Service Act of Puerto Rico which would authorize us to treat each case individually in order to make a separate determination. If this were so, a uniform

rate could never be established for the same class of business in a given zone and it would be necessary to make a uniform provisional rate for each public carrier. The case of the public carriers might perhaps be different from that of the sugar companies. *Cía. Azucarera Toa* v. *Public Service Comm'n*, 71 P.R.R. 197, 207 (Snyder, 1950). As to the bare constitutional problem, we reserve our opinion until an opportunity presents itself.

There is no need for protracting unduly the quasi-legislative action of the Public Service Commission in the instant case. If the Commission erred in not determining at the proper time a return of not less than five per cent on the original cost, less depreciation, resulting from the use of the property or the lapse of time, the sooner such error is corrected the better for all parties concerned. It seems that the injury suffered by the interveners is more than compensated by the earnings received prior thereto during the time the Commission took no action to fix new rates. We must not antagonize more than is necessary, for the mere pleasure of discovering an error, an entity which tries to do its duty.